589 So.2d 495 (1991)
Nancy Bly, Wife of/and William BLY
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY and Lawrence J. Chighizola.
No. 91-CA-271.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 1991.
Rehearing Denied December 17, 1991.
Gerald Wasserman, Sidney M. Bach, Metairie, for plaintiffs/appellees.
Stephanie Hrachovy, Law Offices of Paul A. Eckert, Metairie, for defendants/appellants.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
Appellants Prudential Property and Casualty Insurance Company (henceforth "Prudential") and Lawrence Chighizola appeal that portion of the judgment of the trial court awarding damages for future medical expenses to appellees, Nancy and William Bly. We reverse in part, and amend in part.

PROCEDURAL HISTORY
This is a personal injury suit arising as a result of an automobile accident which occurred on May 28, 1988. Suit was filed, and the matter was tried before a jury. Because the negligence of Mr. Chighizola was stipulated, the sole issue before the jury was quantum. After trial on the merits, a verdict was entered in favor of Nancy Bly in the amount of $32,500.00 in the following proportions:

Past medical expenses  $ 2,500.00
Future medical expenses  15,000.00
Pain and suffering  15,000.00

The jury awarded William Bly damages as follows:

Past medical expenses  $ -0-
Future medical expenses  $ 5,000.00
Pain and suffering  15,000.00

*496 Appellants filed a motion for judgment notwithstanding the verdict (JNOV) and (alternatively) a motion for remittitur or, (alternatively), a motion for new trial. The court granted the JNOV with regard to past medical expenses of Nancy Bly only, reducing that portion of the judgment from $2,500.00 to $1,286.00. Defendants appeal the verdict and judgment only insofar as they pertain to future medical expenses awarded to both appellees.

FACTS
As a result of the accident, Mrs. Bly suffered a contusion of the left chest wall, a cervical sprain and a shoulder sprain. She was treated over a period of approximately two years with medication and some physical therapy. During that time she had ten appointments with her treating physician, Dr. Courtney Russo, and attended physical therapy two or three times a week until November, 1988, when she quit because of the inconvenience to herself.
When asked for a prognosis, Dr. Russo stated that Mrs. Bly's chief problem would continue to be her neck:
... for the rest of her life on and off on an intermittent basis. So she will have toshe'll have this condition the rest of her life, but it's a treatable condition. And if we treat it as we've elicited [sic] to so far, she shouldn't have a lot of trouble, and probably will not require surgery in the future.
Q. Surgery is a possibility, but under treatment, there is a chance that it could be avoided?
A. That's correct.
* * * * * *
... although it's a condition that will worsen, it's a treatable condition?
A. Yes.
Q. Could you give us your best guess, in terms of percentages, as to all things being as they are now, what is the probability of surgery being required?
A. I'd say 40/60.
Q. Forty percent that it will be required.
A. Will. Sixty percent no.
Q. So there's a 40-percent chance that it will be required?
A. Right.
Dr. Russo stated that although Mrs. Bly suffered from a degenerative narrowing of her cervical vertebrae which existed prior to the accident, the accident caused a loss of the lordotic curve, aggravating her condition and causing restricted motion in her neck.
On cross examination, counsel for appellants elicited from Dr. Russo the fact that Mrs. Bly had not undergone a Magnetic Resonance Imaging (MRI) exam, and neither he nor she were "anxious" to or planned on doing any further testing at the present time. Dr. Russo felt that Mrs. Bly should probably be reevaluated about twice a year, maybe for the rest of her life.
Mr. Bly, a nurse anesthetist by profession, had a lumbar laminectomy in 1979, in which three lumbar discs were removed. In 1986, he suffered an aggravation of that problem and was treated conservatively and released.
Dr. J. Carlos Pisarello, his treating physician, testified that following the accident in June, 1988, Mr. Bly returned to him with severe pain in the distribution of the sciatic nerve on his right side. He was treated as an out patient with bed rest, steroids, and physical therapy. However, he only consulted Dr. Pisarello one time at one office visit. A CAT scan taken after the accident showed no marked change in Mr. Bly's condition since 1986, although Dr. Pisarello felt the two tests could not fairly be compared.
Mr. Bly has a herniated disc in addition to his other problems, the origin of which, the evidence shows clearly, predated the accident also. However, it was the opinion of Dr. Pisarello that the accident aggravated these pre-existing conditions because Mr. Bly experienced some problems with this following the accident itself.
The doctor further stated that Mr. Bly would probably need surgery for the herniated disc in the future: "... I suspect that when he reaches his mid-sixties, he's probably *497 going to require a very ample decompressive laminectomy of the lumbar spine, if he does not resort to surgery before."
The testimony of Dr. Pisarello also indicated that Mr. Bly would, as a result of the previous laminectomy at this level, (not as a result of this accident) have a 30% chance of having a spinal fusion. When the patient is past 60 years of age, a decompression of the spinal canal will be probably warranted at that time. He considered the chances of spinal fusion in the future to be "very substantial."
However, as we appreciate the testimony of Dr. Pisarello, there is no doubt that the cause and the condition which may well compel Mr. Bly into surgery is the existence of the laminectomy at three levels and the herniated disc, both of which conditions predated this accident.

ANALYSIS
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that it had been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux [v. Dominque], supra [365 So.2d 1330] at 1333 [ (La.1978) ], Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.

Rosell v. ESCO, 549 So.2d 840 (La.1989), citations omitted.
In Holliday v. United Services Auto. Ass'n, 569 So.2d 143 (La.App. 1 Cir. 1990), the First Circuit has adopted the following position regarding future medical expenses, with which we are inclined to agree, because we believe it reflects the law correctly on this subject as it has been set out by the Louisiana Supreme Court. See Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984) and Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971):
Future medical expenses are a legitimate form of recovery, even though they are not susceptible of precise mathematical calculations. However, awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. Weston v. Bayou Sale Contractors, Inc., 506 So.2d 818 (La.App. 1st Cir.1987). However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award.
[Emphasis added].
In Guillory, supra, the Supreme Court allowed that damages for future medical expenses in the "realistic" amount of $15,000.00 set by the Court of Appeal (which reduced the original jury award of $75,000.00) was a proper sum, despite the fact that no dollar estimate was made by experts at trial.
During the trial of the present case, neither doctor gave the probable cost for future medical treatment, nor did either give an estimate for same.
However, the jury could reasonably have found, in light of the testimony of Dr. Russo, that Mrs. Bly will indeed require surgery on her neck due to the injuries caused by the accident. While her physician gave her a 60% chance that surgery would not be required, a 40% chance that *498 surgery will be necessary is certainly quite substantial. We cannot say that the evidentiary conclusion of the jury, that Mrs. Bly would require surgery, is unreasonable in light of the record as a whole. Again, Mrs. Bly will unquestionably need to be reevaluated by her orthopedic surgeon about twice a year for the rest of her life, which examinations will be obviously somewhat costly. While there is no testimony in the record as to the cost of surgery, we do not find that the amount of $15,000.00 is either unrealistic or unreasonable, and although we believe that the sum may be on the high side, it is not so high as to constitute an abuse of discretion. Therefore, under the jurisprudence, particularly Rosell, supra, we find no manifest error and decline to disturb that award.
We are well aware of the instructions of the Supreme Court relative to the findings of fact made by the trial court, enunciated in Rosell, supra, and more recently in Martin v. East Jefferson General Hospital, et al., 582 So.2d 1272 (1991), and we acknowledge that appellate courts are bound to abide by same. In Martin, the court stated:
... `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Dominique, 365 So.2d 1330 (La.1978). We have instructed the appellate courts that when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
[Emphasis added].
However, here with regard to the award for Mr. Bly we do not find the jury's findings to be "reasonable" in the light of the "entire record" in regard to the award made for future medical expenses; nor can we find that the present case presents "two permissible views of the evidence in this regard." It is unquestionably clear from the testimony that any future medical treatment for Mr. Bly, in the form of surgery, is directly connected to the triple laminectomy and herniated disc, which predated the accident. While the accident here apparently aggravated the symptoms of the previous laminectomy temporarily, there is absolutely nothingZEROin the record to indicate that the condition which "may" necessitate surgery is causally related to the present accident, nor that this accident has hastened, intensified or increased the need or chances for surgery in the future in any manner.
Furthermore, any treatment given by Dr. Pisarello was given free, as a professional courtesy, so there is no charge for past services. Ergo, even if Mr. Bly continued conservative treatment for symptoms, it has not been established that it will cost him anything at all. Consequently, logic and common sense force us to conclude that, in the light of the record as a whole, and in the absence of any evidence whatsoever of the probable cost of future medical care, or any estimate thereof, or any evidence or basis on which an estimate could be made, or any evidence that a determination or estimate of future cost could not be reasonably made, that any award to Mr. Bly for future medical expense is blatant speculation on the jury's part, a clear abuse of their "much discretion" and clearly wrong or manifestly erroneous.
Therefore, it appears clear to us that the finding of the jury concerning the cost of future medical expense for Mr. Bly is not "reasonable" "in the light of the record reviewed in its entirety."

DECREE
For the foregoing reasons, the jury verdict and judgment of the court, insofar as it allows damages for future medical expenses for William Bly is annulled and set aside. The verdict and judgment of the court regarding the future medical expenses for Nancy Bly are affirmed; and all other awards are found to be within the wide discretion of the jury and are affirmed.
*499 All costs of this appeal are taxed to appellees.
VERDICT AND JUDGMENT AFFIRMED IN PART, SET ASIDE IN PART, AND RENDERED.